## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PHARMAZAM, LLC., a Florida
limited liability company,

CASE NO:

     Plaintiffs,

v.

THERMO FISHER SCIENTIFIC, INC.
d/b/a LIFE TECHNOLOGIES CORPORATION,
 a foreign profit corporation,

     Defendant.

_____/

## COMPLAINT

Plaintiff Pharmazam, LLC ("Pharmazam"), sues Defendant Thermo Fisher Scientific, Inc. d/b/a Life Technologies Corporation, ("Thermo Fisher"), collectively referred to as ("the Parties"), stating:

### *Preliminary Statement*

Pharmazam was formed to provide genetic testing services to enable consumers and various medical professionals to better determine the most beneficial course(s) of treatment for a particular patient. Its proprietary app informs consumers of potential drug-to-drug and drug-to-gene interactions, providing valuable

information that doctors can use to tailor treatment to a particular patient's needs. As part of its business, Pharmazam regularly enters into non-disclosure and confidentiality agreements with its vendors, business partners, and affiliates in order to protect its valuable proprietary and confidential business information. Thermo Fisher was one of those vendors, and entered into a Mutual Non-Disclosure Agreement with Pharmazam. Pharmazam ultimately elected not to engage Thermo Fisher to provide testing.

After entering into that agreement, and unbeknownst to Pharmazam, Thermo Fisher entered into a business relationship with another company, Unlock MyDNA, which purports to conduct substantially identical genetic tests and provide services to consumers that are substantially identical to those provided by Pharmazam. As part of that relationship, on May 14, 2020, Thermo Fisher published a report titled "Pharmacogenomics on Axiom Precision Medicine Diversity Array Results from Unlock MyDNA Validation Testing," which included various proprietary information. However, substantially all of the data in that report is in fact *Pharmazam's* confidential and proprietary business information, and a significant portion of the data contained in that report is *actually identified as Pharmazam's data*.

Pharmazam's confidential information and trade secrets were obtained by Thermo Fisher in one of two possible ways: (1) Thermo Fisher obtained

2

Pharmazam's information pursuant to the NDA executed in 2017, whereas, Thermo Fisher's use and disclosure of such information is a breach of the aforementioned NDA; or (2) Thermo Fisher obtained Pharmazam's information from its joint venture partner, Unlock myDNA, at which Thermo Fisher is liable for use and disclosure of Pharmazam's information if Thermo Fisher obtained this information from Unlock myDNA. Regardless of how it obtained that information, though, Thermo Fisher knew or should have known that the data it was publishing was the confidential and proprietary business information of Pharmazam, and published it anyway.

As a result of Thermo Fisher's actions, not only has Pharmazam's trade secret information been misappropriated, it has been published to the world without Pharmazam's knowledge or consent. As a result of these breaches of the Non-Disclosure Agreement and misappropriation of Pharmazam's confidential and proprietary business information, Pharmazam has suffered significant damage.

### *Parties and Jurisdiction*

1.     This Court has subject matter jurisdiction under 18 U.S.C. § 1831, the Uniform Trade Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action involves substantial claims arising under the Lanham Act.

2.     This Court has jurisdiction over Pharmazam's related state and common-law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

3

3.     This Court has personal jurisdiction over Thermo Fisher because Thermo Fisher has distributed, offered for sale, and/or sold genetic testing services within this State, has engaged in acts or omissions within this State causing injury, has manufactured or distributed products used or consumed within this State in the ordinary course of trade, or has otherwise made contacts with this State sufficient to permit the exercise of personal jurisdiction.

4.     This District is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Pharmazam's claims occurred in this District.

5.     Plaintiff Pharmazam, LLC is a Florida limited liability company with its principal place of business in the State of Florida, having its principal place of business in Hillsborough County, Florida.

6.     Pharmazam is the record owner of the "Pharmazam" name and all trademarks at issue in the instant action.

7.     On information and belief, Defendant Thermo Fisher is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Massachusetts, and conducting business routinely throughout the State of Florida.

### *General Allegations*

8.      Pharmazam, through long and extensive research and development, and the expenditure of a considerable amount of time and effort and large sums of money, has developed a substantial number of commercially valuable trade secrets and amount of confidential, proprietary, scientific, technical, and business information concerning the research, development, formulation, processing, production, and marketing of genetic testing services, enabling consumers and various medical professionals to better determine the most beneficial course(s) of treatment for a particular patient.

9.      Pharmazam has used this information to generate various written materials, drawings, processes, procedures, equipment, lists of suppliers and customers, and the like, and that information constitutes a valuable commercial asset for Plaintiffs.

10.     Pharmazam has taken reasonable steps to keep its confidential and proprietary business information secret, including but not limited to:

   a.      restricting access to that information to employees who have a need to know it;

   b.      maintaining that information on password-protected databases;

     c.      requiring its employees, business partners, vendors, affiliates, and other individuals or entities granted access to that information to agree to confidentiality and non-disclosure agreements; and

11.     Thermo Fisher is a business that, amongst other things, performs various genetic testing services for clients in different industries.

12.     Pharmazam and Thermo Fisher explored a potential relationship where Thermo Fisher would provide genetic testing services for Pharmazam, the results of which would be incorporated into information presented to Pharmazam's customers through its app.

13.     During Pharmazam's dealings with Thermo Fisher, it became apparent that in determining and evaluating a possible business relationship, the Parties would need to discuss and disclose valuable proprietary and confidential information, including Pharmazam's trade secrets.

14.     In order to protect its confidential and proprietary business information, Pharmazam required that Thermo Fisher enter into a Mutual Non-Disclosure Agreement (the "NDA") prior to any disclosure. A true and correct copy of the NDA is attached to this Complaint as **Exhibit "A"**.

15.     The NDA requires Thermo Fisher to, *inter alia*:

(1) hold [Pharmazam's] Confidential Information in confidence and to take all necessary precautions to protect such Confidential Information with the same degree of care which [Thermo Fisher] employs to its own confidential information, (2) not to divulge any of [Pharmazam's] Confidential

Information or any information derived therefrom to any third party, (3) not to make any use of [Pharmazam's] Confidential Information, and (4) not to copy or reverse engineer, or attempt to derive the composition of underlying information of any such [Pharmazam's] Confidential Information.

*See* Exhibit "A".

16.    In reliance on Thermo Fisher's entry into the NDA and agreement to keep Pharmazam's trade secrets, proprietary information and other confidential information in confidence, Pharmazam disclosed confidential and proprietary information relating to its business to Thermo Fisher.

17.    At all times, Thermo Fisher knew that the information provided by Pharmazam was provided in confidence, and that Pharmazam considered that information to be trade secrets, proprietary information, or otherwise confidential information. By the plain terms of the NDA, Thermo Fisher knew that it was under an obligation not to disclose that information to anyone not a party to the NDA.

18.    Thermo Fisher knew that this information was a valuable commercial asset of Pharmazam, and that Pharmazam had expended significant time, effort, and money in developing the its confidential, proprietary and trade secret information.

19.    On May 14, 2020, Thermo Fisher announced its partnership with Unlock MyDNA, a direct competitor of Pharmazam. Unlock myDNA, is an entity formed by Wesley Moschetto. Moschetto is a former director of Pharmazam and obtained significant confidential information and trade secrets of Pharmazam during the course of his relationship with Pharmazam.

7

20.    As part of this announcement, Thermo Fisher published a document on its website entitled "Pharmacogenomics on Axiom Precision Medicine Diversity Array Results from Unlock MyDNA Validation Testing" (the "Validation Report"). A true and correct copy of the Validation Report is attached to this Complaint as **Exhibit "B"**. The document has been published and remains published on the web site of Thermo Fisher's venture partner, Unlock myDNA.

21.    Within the Validation Report, Thermo Fisher reveals its partnership with Unlock myDNA on pages 28 and 29 of the published document. Unlock myDNA confirms the venture partnership on its web site: "Unlock MyDNA has spent years working alongside Thermo Fisher Scientific, … in developing, validating and perfecting the performance of [their] diagnostic test. We have successfully validated thousands of live patient samples at a 100% Success Rate, all using Begley's Rules of Reproducibility."

22.    The Validation Report contains substantial amounts of Pharmazam's private and confidential business information, including a table of genetic markers that is clearly and repeatedly designated as belonging to Pharmazam.

23.    By publishing the Validation Report, Thermo Fisher has misappropriated Pharmazam's confidential and proprietary business information, including trade secret information, by incorporating that information within the Validation Report for Thermo Fisher's commercial advantage.

8

24.     Thermo Fisher has misappropriated, misused, and stolen Pharmazam's proprietary and confidential information, including trade secret information, in order to compete with Pharmazam in the field of genetic testing services.

25.     Thermo Fisher did not incur the expense and spend the time necessary to research and develop its own products, technology, sources, processes, procedures, equipment, and the like, for genetic testing services, but instead misappropriated this information from Pharmazam.

26.     Upon entering into the NDA, Thermo Fisher had knowledge and possessed of Pharmazam's valuable trade secrets and confidential information which had been disclosed to them in confidence and in trust pursuant to the NDA.

27.     Thermo Fisher has breached the NDA and violated the confidence and trust placed in it by Pharmazam, by disclosing and using Pharmazam's confidential and proprietary business information without Pharmazam's consent.

28.     Regardless of how Thermo Fisher obtained Pharmazam's confidential and proprietary business information, whether directly from Pharmazam or from Unlock myDNA, Thermo Fisher's use and disclosure of that information was unlawful and wrong.

29.     Pharmazam's confidential information and trade secrets were obtained by Thermo Fisher in one of two possible ways:

    a. As describe above, Thermo Fisher obtained Pharmazam's information pursuant to the NDA executed in 2017, whereas, Thermo Fisher's use and disclosure of such information is a breach of the aforementioned NDA; or

    b. Thermo Fisher obtained Pharmazam's information from its joint venture partner, Unlock myDNA. Thermo Fisher is liable for use and disclosure of Pharmazam's confidential information and trade secrets if Thermo Fisher obtained this information from Unlock myDNA.

30.    Thermo Fisher was pursuing Pharmazam's business since as early as May 22, 2017, when Daniel Leddy, a Thermo Fisher employee, began corresponding with Pharmazam's managers in an effort to secure Pharmazam's business.

31.    When Moschetto joined Pharmazam in 2018, he set about cultivating a relationship with Mr. Leddy and Dawn Waltman, another Thermo Fisher employee. After trying and failing to secure a business relationship between Thermo Fisher and Pharmazam, Moschetto and Thermo Fisher formed a partnership designed to get Thermo Fisher the business unlawfully.

32.    Thermo Fisher's venture partner, Unlock myDNA, is an entity formed by Wesley Moschetto, a member and former director of Pharmazam. Moschetto was

a director of Pharmazam and obtained the information disclosed by Thermo Fisher in **Exhibit "B"**, during the course of his relationship with Pharmazam.

33.     As a director, Moschetto owed a fiduciary duty to Pharmazam to protect its proprietary information. Moschetto also has a signed Non-Disclosure Agreement with Pharmazam. At all times, Thermo Fisher knew or should have known that Moschetto was an officer and director of Pharmazam.

34.     In July of 2018, Moschetto lobbied Pharmazam's leadership to reconsider using Thermo Fisher for its lab testing. To that end, Thermo Fisher was given a second opportunity to pitch its business to Pharmazam, but Pharmazam ultimately chose to engage a different laboratory services provider. This opportunity was provided to Thermo Fisher at Moschetto's insistence and based upon his ongoing business relationship with Thermo Fisher.

35.     As part of that partnership, Moschetto formed Unlock myDNA and immediately entered into a nondisclosure agreement with Thermo Fisher. Indeed, while the Non-Disclosure Agreement is dated November 30, 2018, that date predates the organization of Unlock myDNA.

36.     At that time, Thermo Fisher knew or should have known that Moschetto was a director of Pharmazam, and that Moschetto and Thermo Fisher were both subject to non-disclosure obligations. Thermo Fisher also knew that its use of

Pharmazam's information to support a competing business was aiding and abetting a breach of Doe's duties to Pharmazam.

37.     Finally, Thermo Fisher is liable for Moschetto's and Unlock myDNA's acts in furtherance of their partnership as a matter of law, as is the case with any partnership.

38.     Regardless of the means of obtaining Pharmazam's confidential information and trade secrets, the use and disclosure of the information by Thermo Fisher is actionable and has caused Pharmazam enormous damage.

39.     If the information was obtained by Thermo Fisher from Pharmazam, then its use and disclosure was protected by the Non-Disclosure Agreement between Pharmazam and Thermo Fisher, making Thermo Fisher liable to Pharmazam for breach of contract and violations of the Defend Trade Secrets Act.

40.     If the information was obtained from Thermo Fisher's venture partner Unlock myDNA, then it was obtained and used unlawfully because the principal behind Unlock myDNA was subject to a Non-Disclosure Agreement with Pharmazam, along with fiduciary duties to Pharmazam; the breach of which was, on information and belief, aided by Thermo Fisher.

41.     On information and belief, unless enjoined by this Court, Thermo Fisher will continue to disclose and use Pharmazam's trade secrets and confidential information, and that ongoing misappropriation of Pharmazam's proprietary and

confidential business information has caused and will continue to cause irreparable harm to Pharmazam.

42.     Thermo Fisher knowingly, willfully, and deliberately misappropriated Pharmazam's trade secrets and other confidential information with full knowledge of the secret and confidential nature of that information and of the commercial value of that information. Thermo Fisher further wrongfully used and unlawfully exploited Pharmazam's trade secrets and confidential information, resulting in damage to Pharmazam.

43.     Further, as evidenced in the Validation Report, Thermo Fisher blatantly used Pharmazam's name and trademark, "Pharmazam" within the report without Pharmazam's knowledge or consent.

44.     In **Exhibit "B"**, and on information and belief elsewhere, Thermo Fisher advertised, promoted, solicited, sold or offered for sale various services in connection with Pharmazam's registered name and mark of "Pharmazam" for Thermo Fisher's own benefit without Pharmazam's knowledge or consent.

45.     Thermo Fisher's breach of confidence and trust through the unauthorized disclosure and use of Pharmazam's trade secrets and confidential information by the Thermo Fisher, and the misappropriation of Pharmazam's trade secrets and confidential information, is greatly and irreparably damaging to

Pharmazan, and Thermo Fisher will continue so to damage plaintiff unless restrained by this Court.

## ***Confidential Information and Trade Secrets***

46.    Pursuant to the NDA, Thermo Fisher undertook a duty to protect any information related to Pharmazam's proprietary state of the art HIPAA compliant Medication Management System, which includes mobile apps, internet applications, customized internet support portals, specialized monitoring, and reporting applications, kiosks, and other specialized systems and delivery and support methods. Further, any information related to Pharmazam's physician ordered and reviewed specialized tests and FDA cleared test which consists of a PGx swab test kit ("Pharmazam PGx") or a blood drop IgQ allergy test kit ("Pharmazam A"), 3rd party laboratory processing of said kit, logistics of all shipping and information routing, result submission to software managed access pints and inclusion into Pharmazam Systems to produce real-time patient specific reports and regulatory strategies.

47.    In addition, Thermo Fisher is under a duty to protect any information related to additional Pharmazam software including but not limited to "P-AI", more particularly described as the Pharmazam Automated Critical Health Medication notification Engine, which provides automatic real-time analysis of an entire patient population, and alerts patients of potential adverse drug reactions and drug to

medical conditions and issues with regard to drug to gene, drug to allergy, drug to food, and drug to lifestyle interactions. Additionally, Thermo Fisher must also keep secret information regarding P-AI's utilization to automatically identify chronic care patients and alert on potential unseen medical issues which may be resolved through the utilization of the Pharmazam System.

48.    In addition, Thermo Fisher has a continued legal duty to protect all information related to Pharmazam System Products, and/or Services in any manner including but not limited to (1) any product in any form or any state of development, technologies, kits, protocols, design methodologies, devises, platforms, workflows, computer code, design, configurations, compositions, use, manufacturing, layouts, and/pr packing of any of the foregoing; (2) extraction, manipulation, processing, analysis and/or storage of date related to any of the foregoing; and/or (3) ideas, concepts, designs, inventions, patentable or copyrightable subject matter, technical information, product or product ideas, processes, materials, material handling, composition, equipment, specification, methods, systems, plans, technologies, procedures, models, programs, software or code, data, models, specifications, drawings or diagrams, flow charts, roadmaps, documentation, know-how, trade secrets, works of authorship, derivative works, improvements or modifications and software.

49.    All conditions precedent to the maintenance of this action have occurred, have been satisfied, or have been waived.

## COUNT I
### Breach of Contract – Confidentiality Agreement

1.    Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

2.    Pharmazam entered into the NDA with ThermoFisher, with an effective date of May 31, 2017. *See* **Exhibit "A".**

3.    The NDA is an enforceable contract.

4.    This agreement obligated Thermo Fisher to hold Plaintiffs' confidential and proprietary information disclosed to Thermo Fisher in trust for the Plaintiffs and not to use said information or to disclose information to outsiders.

5.    Pursuant to **Exhibit "B"**, and additional information and belief, in breach of the terms of the NDA, Thermo Fisher did not hold Pharmazam's said confidential proprietary information in trust, but instead wrongfully used the information and wrongfully disclosed that information to outsiders.

6.    As a direct result of Thermo Fisher's breach of the NDA, Pharmazam has been suffered damages in an amount to be determined at trial.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher for breach of contract, damages in an amount to be determined at trial, post-judgment

interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## COUNT II
### *Trade Secret Misappropriation –Florida Statute § 688.001 and Uniform Trade Secrets Act*

7.     Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

8.     The information entrusted to Thermo Fisher constitute trade secrets in that they

      a.     constitute information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

      b.     have been the subject of reasonable efforts to maintain their secrecy.

9.     Thermo Fisher was fully aware of the confidential and trade secret nature of the information received form Pharmazan.

10.     Further, Thermo Fisher was fully aware of the confidential and trade secret nature of the information received from Unlock myDNA.

11.     Thermo Fisher's improper use of Pharmazam's trade secret information was deliberate and intentional.

12.   Thermo Fisher's deliberate and intentional actions in using Pharmazam's confidential information and trade secret information constitute trade secret misappropriation.

13.   Thermo Fisher's actions are the direct and proximate cause of damages to Pharmazam.

14.   As a direct and proximate cause of Thermo Fisher's trade secret misappropriation, Thermo Fisher has been unjustly enriched in an amount to be determined at trial.

15.   Thermo Fisher's misappropriation of Pharmazam's trade secrets was willful and malicious.

16.   Thermo Fisher has irreparably injured Pharmazam, and such injury will continue unless enjoined by this Court.

17.   As a result of Thermo Fisher's acts and omissions, Pharmazam is entitled to recover damages.

18.   Pharmazam seeks temporary and permanent injunctive relief.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, entry of a temporary and permanent injunction enjoining Thermo Fisher from using any of Pharmazam's misappropriated trade secrets, compelling the return of any retained documentation that constitute or contain Pharmazam's trade secrets, its reasonable

costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## COUNT III
### *Trade Secret Misappropriation – Defend Trade Secret Act of 2016*

19.    Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

20.    This claim by Pharmazam is against Thermo Fisher for violation of the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1831, et seq.

21.    The information entrusted to Thermo Fisher constitute trade secrets in that they;

   a.    constitute information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

   b.    have been the subject of reasonable efforts to maintain their secrecy.

22.    Thermo Fisher was fully aware of the confidential and trade secret nature of the information received from Pharmazan.

23.    Further, Thermo Fisher was fully aware of the confidential and trade secret nature of the information received from Unlock myDNA.

24.    Thermo Fisher's improper use of Pharmazam's trade secret information was deliberate and intentional.

25. Thermo Fisher's deliberate and intentional actions in using Pharmazam's confidential information and trade secret information constitute trade secret misappropriation.

26. Thermo Fisher's actions are the direct and proximate cause of damages to Pharmazam.

27. As a direct and proximate cause of Thermo Fisher's trade secret misappropriation, Thermo Fisher has been unjustly enriched in an amount to be determined at trial.

28. Thermo Fisher has engaged in willful and malicious misappropriation and as a result, Pharmazam is entitled to twice the amount of its actual damages and/or the amounts by which Thermo Fisher have been unjustly enriched as exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

29. Thermo Fisher has irreparably injured Pharmazam, and such injury will continue unless enjoined by this Court.

30. As a result of Thermo Fisher's acts and omissions, Pharmazam is entitled to recover damages.

31. Because Thermo Fisher willfully and maliciously misappropriated its trade secrets, Pharmazam is also entitled to its attorney's fees associated with the maintenance of this action pursuant to 18 U.S.C. 1826(b)(3)(D).

32.    Pharmazam seeks temporary and permanent injunctive relief, pursuant to 18 U.S.C. § 1836(b)(3)(A).

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, entry of a temporary and permanent injunction enjoining Thermo Fisher from using any of Pharmazam's misappropriated trade secrets, compelling the return of any retained documentation that constitute or contain Pharmazam's trade secrets, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## Count IV
### *Federal Trademark Infringement – 15 U.S.C. § 1114 & Lanham Act*

33.    Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

34.    Thermo Fisher's use of Pharmazam's name in connection with genetic testing services identical to those provided by Pharmazam under its own "Pharmazam" name and trademarks has caused and is likely to cause confusion, to cause mistake, or to deceive persons into the erroneous belief that the services promoted by Thermo Fisher were authorized, sponsored by or connected in some way with Pharmazam.

35.    Thermo Fisher's conduct as described in this Complaint was carried out with the intent and purpose of appropriating and trading upon the goodwill and

21

reputation of Pharmazam, and of passing off Thermo Fisher's services, knowledge, information and services as Pharmazam's.

36.    Thermo Fisher's acts were undertaken without the knowledge or consent of Pharmazam and without license by Pharmazam.

37.    Thermo Fisher's acts constitute willful and deliberate infringement of Pharmazam's federally registered trademarks, US Serial Number: 87492314 & US Serial Number: 87492318, in violation of Section 32(1) of the Lanham Act, as amended, 15 U.S.C. § 1114.

38.    The willful and wanton nature of Thermo Fisher's conduct constitutes an exceptional case, and Pharmazam is entitled to its reasonable attorneys' fees as a result.

39.    Thermo Fisher has caused and is likely to continue causing substantial injury Pharmazam, and Pharmazam is entitled to injunctive relief and to recover any and all damages, costs, and reasonable attorneys' fees as provided under 15 U.S.C. §§ 1114, 1116 and 1117.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## Count V
### *Florida Trademark Infringement – Florida Statute § 495.131*

40.　Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

41.　Pharmazam owns the federally registered trademarks, US Serial Number: 87492314 & US Serial Number: 87492318, for the mark and specific style of the name/term "Pharmazam".

42.　Pharmazam has the exclusive right to use the name "Pharmazam" in the State of Florida in respect of genetic testing services and related services.

43.　Thermo Fisher has used, offered to sell, advertised, and promoted its genetic testing services in connection with Pharmazam's registered trademark in a manner that is likely to cause confusion or mistake or to deceive customers as to the affiliation, connection or association of Thermo Fisher with Pharmazam or as to the origin, sponsorship or approval of Thermo Fisher's services by Pharmazam.

44.　On information and belief, Thermo Fisher's conduct as described in this Complaint was undertaken with full knowledge of Pharmazam's rights in and to the name and mark of "Pharmazam", with the intent to cause confusion or mistake or to deceive the public.

45.　Thermo Fisher's conduct as described in this Complaint was undertaken without Pharmazam's knowledge or consent, and without license from Pharmazam.

46.     Pharmazam has been and will continue to be irreparably damaged by Thermo Fisher's conduct in that consumers are likely to be induced into dealing with Thermo Fisher in the mistaken belief that Thermo Fisher's services, which have been advertised, promoted, solicited, sold or offered for sale in connection with Pharmazam's registered name and mark of "Pharmazam", are authorized, endorsed, sponsored by or otherwise approved by Pharmazam.

47.     Thermo Fisher is causing and will continue to cause irreparable injury to Pharmazam's goodwill in violation of Florida law, FLA. STAT. ANN. § 495.131 (West 2007). Pharmazam is therefore entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## Count VI
### Trademark Dilution and Injury to Business Reputation– Florida Statute § 495.151

48.     Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

49.     Since 2016, Pharmazam has continuously advertised, promoted, offered genetic testing services to enable consumers and various medical

professionals to better determine the most beneficial course(s) of treatment for a particular patient, in the State of Florida and elsewhere, under the name and mark of "Pharmazam".

50.    As a result of Pharmazam's extensive and continuous use, the name and mark of "Pharmazam" have become well-known, distinctive, and famous trademarks.

51.    Through its conduct as described in this Complaint, Thermo Fisher is offering or causing to be advertised, sold and offered for sale, genetic testing services in connection with a mark and name that is the same, and or, confusingly similar to the name and mark of "Pharmazam" without Pharmazam's knowledge or consent.

52.    Thermo Fisher is causing and will continue to cause irreparable injury to Pharmazam's goodwill and business reputation, and dilution of the distinctiveness and value of Pharmazam's famous and distinctive name and mark of "Pharmazam", in violation of Florida law.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## Count VII
### *Unfair Competition– Florida Statute § 501.204*

53.    Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

54.    Thermo Fisher is engaged in proving medical professional and consumers genetic testing services, including determining the most beneficial courses of treatment for a particular patient, in direct competition with Pharmazam.

55.    Thermo Fisher has unfairly competed with Pharmazam by deliberately breaching the Non-Disclosure agreement, disclosing, misappropriating, using and attempting to sell Pharmazam's confidential and trade secret information for the commercial benefit of Thermo Fisher through the conduct described in this Complaint.

56.    Further, Thermo Fisher's unauthorized use of the name and mark of "Pharmazam", constitutes a false designation of origin and false description, and falsely represents to the public that the services advertised, sold and offered for sale by Pharmazam, emanate from the same source or origin as Thermo Fisher's services, or are authorized, endorsed, sponsored, or otherwise approved by Pharmazam.

57.    In addition, Thermo Fisher has engaged in acts of misappropriation of Pharmazam's trade secrets and confidential information in order to develop the same genetic testing services in direct competition with those of Pharmazam with an immediate marketability and salability which they would not have were it not for

Pharmazam's disclosure of its confidential and proprietary information pursuant to the NDA.

58.    Further, Thermo Fisher is also liable for use and disclosure of Pharmazam's confidential information and trade secrets even if Thermo Fisher obtained this information from Unlock myDNA. Thermo Fisher was fully aware of the confidential and trade secret nature of the information received from Unlock myDNA.

59.    Thermo Fisher has breached their contractual and fiduciary obligations to Pharmazam such that its actions constitute unfair competition as to Pharmazam.

60.    As a direct result of Thermo Fisher's conduct, Pharmazam has suffered significant damage.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, actual damages in an amount to be determined at trial, post-judgment interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## <u>Count VIII</u>
### *Unfair Competition - Lanham Act and 15 U.S.C. § 1125(a).*

61.    Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

62.    Thermo Fisher has unfairly competed with Pharmazam by deliberately breaching the Non-Disclosure agreement, disclosing, misappropriating, using and

attempting to sell Pharmazam's confidential and trade secret information for the commercial benefit of Thermo Fisher.

63.     Further, Thermo Fisher's unauthorized use of the name and mark of "Pharmazam", constitutes a false designation of origin and false description, and falsely represents to the public that the services advertised, sold, and offered for sale by Pharmazam, emanate from the same source or origin as Thermo Fisher's services, or are authorized, endorsed, sponsored, or otherwise approved by Pharmazam.

64.     Despite its knowledge of the falsity of those representations, Thermo Fisher offered or caused to be advertised, sold and offered services in connection with trademarks that are confusingly similar to those of the name and mark of "Pharmazam".

65.     Further, Thermo Fisher is also liable for use and disclosure of Pharmazam's confidential information and trade secrets even if Thermo Fisher obtained this information from Unlock myDNA. Thermo Fisher was fully aware of the confidential and trade secret nature of the information received from Unlock myDNA.

66.     Pharmazam has been and will continue to be irreparably damaged by Thermo Fisher's deliberate breach of the Non-Disclosure agreement, and its disclosure and misappropriation of Pharmazam's confidential and trade secrets.

67.    Thermo Fisher's conduct has caused, and is likely to continue causing, substantial injury to Pharmazam. Pharmazam is entitled to injunctive relief and to recover any and all damages, costs, and reasonable attorneys' fees as provided pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## COUNT IX
### *Common Law Trademark Infringement and Unfair Competition*

68.    Pharmazam restates and incorporates the allegations contained in paragraphs 1-35 as if fully set forth herein.

69.    Pharmazam has continuously advertised, promoted, offered for genetic testing services and additional related services in the State of Florida and elsewhere under the name and mark of "Pharmazam".

70.    Thermo Fisher is offering or causing to be advertised, sold and offered for sale genetic testing services in connection with a mark and name that is the same or confusingly similar to the name and mark of "Pharmazam"

71.    Thermo Fisher's conduct as set forth in this Complaint is in violation of the common law of the State of Florida, in that Thermo Fisher's use in Florida of name and mark of "Pharmazam" in connection with the promotion or sale of for

genetic testing services has caused and will continue to cause a likelihood of confusion among the public that Thermo Fisher's services are affiliated with, associated with, or otherwise approved by Pharmazam.

72.     As a result, Thermo Fisher has been and is now being unjustly enriched by its wrongful misappropriation of the name and mark of "Pharmazam", and the goodwill associated with Pharmazam's trademarks, including the name "Pharmazam."

73.     As a result of Thermo Fisher's acts, Pharmazan has been damaged in an amount tto be determined at trial. At a minimum, however, Pharmazan is entitled to injunctive relief, to an accounting of Thermo Fisher's profits, to damages, and to costs. In light of the deliberately fraudulent and malicious use of confusingly similar imitations of the name and mark of "Pharmazam", and the need to deter Thermo Fisher from similar misconduct, Pharmazam is also entitled to punitive damages.

WHEREFORE, Pharmazam seeks a judgment against Thermo Fisher, damages in an amount to be determined at trial, post-judgment interest, its reasonable costs and attorneys' fees associated with the maintenance of this action, and such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all matters so triable.

Dated: December 14, 2021

Respectfully Submitted,

*/s/ Garrett Severson*

Paul Thanasides
Florida Bar No.: 103039
paul@mcintyrefirm.com
clservice@mcintyrefirm.com
Garrett Severson
Florida Bar No. 108259
garret@mcintyrefirm.com
complexlit@mcintyrefirm.com
McIntyre Thanasides Bringgold Elliott
   Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
Telephone: 813.223.0000
Facsimile: 813.225.1221
***Attorneys for Plaintiffs***